## Husband's Receiver v. Fidelity & Deposit Co., et al.

(Decided June 6, 1911.)

### Appeal from McCracken Circuit Court.

1. Appeals—Schedules—When a party desires to take an appeal before the clerk of this court, and brings up a partial record, he may before the appeal is granted file in the office of the clerk of the lower court a schedule with notice, and when the appeal is granted bring up the record made in accordance with the schedule previously filed.

2. Surety on Fiducial Bond—Actions Against—Death of Fiduciary—In an action by a receiver against an assignee and the sureties in his bond to recover possession of the assigned estate, the death of the assignee pending the suit although the action was not revived against his personal representative did not prevent a judgment being taken against the sureties in his bond. They might have been sued alone.

3. Surety on Fiducial Bond—Liability of—Sureties in the bond of an assignee obligated themselves that the assignee would faithfully discharge the duties of his office and when he failed and refused to surrender to the receiver the assets and property in his hands, he committed a breach of his bond and thereupon the receiver had the right to bring an action upon the bond against the sureties alone, and hold them accountable for the delinquency of their principal.

4. Assignee—Action Against, to Recover Estate—Burden of Proof—In an action by a receiver against an assignee to surcharge settlements and recover the estate in his hands, the burden of proof was on the receiver to show what items in the settlement made by the assignee were not correct, but the burden was on the assignee to show what disposition he made of assets and property that the settlements showed came into his hand but did not show what disposition he made of.

J. G. HUSBANDS, WM. MARBLE for appellant.

J. D. MOCQUOT and J. C. FLOURNOY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The Paducah Building Trust Company was organized in 1893 and continued in business until June, 1899, when it made a general deed of assignment to R. G. Caldwell for the benefit of its creditors. Caldwell accepted the trust and executed bond in the sum of ten thousand dollars, with the Fidelity & Deposit Company of Maryland as his surety. In March, 1901, on motion of the Fidelity & Deposit Company of Maryland the assignee was required to give other surety on his bond as assignee, and thereupon the appellee, Aetna Indemnity Company became his surety on a bond for ten thousand dollars. Afterwards, in December, 1903, Caldwell was removed as assignee by the McCracken Circuit Court and an order was entered directing him to turn over to Husbands as receiver all assets and property in his hands. It seems that the assignee did not comply with this order of court, and in December, 1903, this action by direction of the court, was brought by Husbands as receiver against Caldwell and his sureties, the Fidelity & Deposit Company and the Aetna Indemnity Company, seeking to recover a large amount of money alleged to be due by Caldwell as assignee. Pending this action Caldwell died, but the suit was prosecuted against the sureties, and in 1909 a judgment was rendered against them for $3,365.74, with interest from December 23, 1903.

The receiver, Husbands, not being satisfied with the amount of this judgment, has brought the case to this court; and the appellees also complaining have prosecuted a cross-appeal.

As the case will be reversed so that it may be prepared for trial, we will only dispose of such legal questions as are presented by the record, leaving untouched the questions of fact.

1. The appellees in due time made a motion in this court to dismiss the appeal because the appellant had failed to file in the office of the clerk of the McCracken Circuit Court the schedule required by the Civil Code. It appears from the record that the judgment appealed from was rendered in March, 1909, and an appeal was prayed and granted in the lower court, but the appellant

did not prosecute that appeal within the time provided by the Code and so it was abandoned. On October 15, 1909, after the time in which the record should have been filed in this court on the appeal taken in the lower court, the appellant filed in the office of the clerk of the McCracken Circuit Court a schedule and gave due notice to appellees of its filing, but they did not file any schedule. This schedule directed the clerk to copy only a part of the record. On August 20, 1910, a copy of the judgment was filed in this court, and an appeal granted by the clerk of this court. After the appeal was granted by the clerk of this court no schedule was filed in the lower court, but the record filed in this court when the appeal was granted by the clerk was made out in accordance with the schedule filed in October, 1909. It is provided in section 737 of the Civil Code, that:

"If the appellant, to whom an appeal is granted by the Clerk of the Court of Appeals, choose to file a transcript of a part only of the record, he shall file in the office of the clerk of the inferior court a schedule similar to that above described; and shall cause notice of the filing thereof to be served on the appellees, and to be returned to said office, as a summons is directed to be served and returned. Within twenty days after the service of such notice, or at any subsequent time before completion of the transcript ordered by the appellant, and not afterwards, the appellee may file in said office a schedule similar to that above described if he wish to take a cross-appeal."

No brief is filed for the appellee on the motion to dismiss the appeal, but we presume the motion is based on the ground that the appellant after the appeal was granted by the clerk of this court should have filed a schedule with notice. The Code does not specify whether the schedule in cases like this shall be filed before or after the appeal is granted by the clerk of this court, merely providing that it shall be the duty of the appellant to file a schedule. As the Code does not direct the time in which a schedule shall be filed we think that a party who desires to take an appeal before the clerk of this court may file in the office of the clerk of the lower court a schedule with notice before he prays the appeal, and that the transcript made out in accordance with this schedule may be filed when the appeal is taken. The

fact that the party desiring to prosecute an appeal in this court files a schedule with notice is information to the adverse party that he will prosecute an appeal, and thereupon the adverse party may if he so desires file his schedule. It is not necessary that the party desiring to prosecute an appeal should delay filing his schedule until after the appeal has been granted by the clerk of this court, although we do not mean to hold that this practice might not be allowable if the transcript made out in accordance with the schedule so filed was lodged with the clerk of this court within the time provided by the Code. It follows from this that the motion to dismiss the appeal must be overruled.

2. During the pendency of this suit by the receiver against Caldwell and his sureties Caldwell died, and in May, 1907, J. D. Mocquot was by an order of the McCracken County Court granted letters of administration on his estate. The action was not revived against the administrator nor was the death of Caldwell suggested of record until March, 1909, when the administrator of Caldwell filed his affidavit suggesting his death, but no motion to abate the action as to the sureties was made nor does the record show that they raised the question that the death of Caldwell without revivor abated the action as to them. But in this court counsel for appellees insists that the failure to revive in the time provided in the Code the action against Caldwell had the effect of abating it as to his sureties, and so it was error to render judgment against them. Passing the question as to the right of the sureties to raise this question for the first time in this court. we will consider it as if they had moved for a dismissal or abatement of the action in the lower court when the plaintiff let the time expire in which the action could be revived against the administrator. If it was necessary to the maintenance of the action against the sureties or to enable the plaintiff below to take judgment against them that the action against Caldwell's administrator should have been revived, it was of course error to give judgment for any amount against the sureties. But we do not think the failure to revive the action against the administrator affected the right of the plaintiff in the action to prosecute it to a conclusion against the sureties. This action was brought by the receiver of the court by the direction of the court against the assignee and the sureties upon

his bond to compel him to account for and surrender to the receiver all the assets and property that came into his hands and remained undistributed. Several breaches of the bond of Caldwell as assignee were set up, and judgment for these breaches was sought against him and his sureties. Each of the sureties executed a bond obligating itself in substance that Caldwell would faithfully discharge the duties of his office, and when he failed and refused to surrender to the receiver the assets and property in his hands in obedience to the orders of the court, he committed a breach of his bond, and thereupon the receiver under authority of the court had the right to bring an action upon the bond against the sureties alone, and hold them accountable for the delinquency of their principal  There was no contest between the receiver and other persons as to whom the funds alleged to be in the hands of the assignee should be paid. The receiver was entitled to collect all of the undistributed funds in the hands of the assignee, and to have turned over to him all the property in his possession. It was not necessary that a judgment should be entered against the assignee or the administrator before the action could be prosecuted to judgment against the sureties in his bond. The assignee and each of the sureties were jointly and severally liable in this action by the receiver, and it was the duty of the sureties to see to it that the assignee in obedience to the orders of the court made a full accounting of the assets and property in his hands. The receiver did not seek a judgment against the assignee for the benefit of any particular person or with respect to any particular claim or demand; nor was the action prosecuted for the benefit of any class of individuals. It was for the purpose of taking the estate entirely out of the hands of the assignee. There is a marked difference between this case and the case of Craddock v. Payton, 114 Ky., 298, and the others therein referred to. That was a suit brought against an administrator for a settlement of the estate, and it was found that there was a balance in the hands of the administrator for distribution to the widow and heirs at law. Afterwards, suit was brought by the assignee of the widow on the bond of the administrator to recover the amount found to be due the widow. The securities in the bond relied on the statute of limitation, insisting that the cause of action accrued before the judgment

was entered that ascertained the amount in the hands of the administrator for distribution. But the court said:

"In an unbroken line of decisions this court has held that a suit upon the bond of a personal representative for a devastavit can not be maintained until there has been a judgment ascertaining the amount of the demand against the estate, and showing assets in the hands of the personal reperesentative sufficient to pay the demand, or a part of it. * * * There was a controversy between the creditors of the deceased and his distributees as to who was entitled to the funds in the hands of the personal representative, and until this matter was determined by the judgment of the circuit court, confirming the master's report, it was impossible to know the extent of appellee's demand against the personal representative. That judgment, for the first time, ascertained the amount of the claim; and, as it was not superseded, appellee had a right to demand of the personal representative that he should pay to him the amount shown due by this report, and upon his failure to do so there accrued to him a cause of action against the securities upon his official bond for the first time."

3. The condition of the record is such that it would be difficult if not impossible to ascertain with reasonable certainty the amount, if any, for which judgment should go against the sureties. The record is made up entirely of pleadings, orders of court, and settlements; and we shall not undertake on this complicated and partial record to finally determine the rights of the parties. The case should be referred to a commissioner to report the assets that came into the hands of the assignee, and the disposition made of them; giving each party the right to file such additional pleading as they may deem necessary and take such evidence in support of their respective contentions as they desire. Upon the commissioner's report and exceptions thereto the lower court can enter a judgment, and from this judgment of course the parties may prosecute an appeal to this court.

4. In respect to the burden of proof, we may say this: In so far as the action by the receiver seeks to surcharge settlements made by the assignee in the county court, the burden is upon the receiver to show the

items in these settlements that are not correct. The settlements made by the assignee in the county court in so far as they disclose the assets that came into the hands of the assignee and the disposition made thereof are prima facie correct. But the burden is on the assignee to show what disposition he made of the assets and property that the settlements show came into his hands, but do not show what disposition he made of. In other words, where the settlements made by the assignee show the amount that came into his hands, and the disposition made of it by him, the burden is on the receiver to show in what respect, if any, the items of receipts and disbursements are not correct. On the other hand, the burden is on the assignee, or the sureties in this case, to show what disposition was made of the assets and property shown by the settlements to have come into the possession of the assignee but that the reports do not show what disposition was made of.

5. A question is made by counsel for the sureties as to the extent of their liability as between themselves and for the acts of the assignee. Upon this matter we express no opinion. If the sureties desire to raise this or any other question again, they may do so without being concluded by this opinion.

Wherefore, the judgment is reversed, with directions to proceed in conformity with this opinion, each party to pay his own cost incurred in this and the lower court growing out of this appeal.