## Clark-Lack Grocery Co.'s Assignee et al. v. Price, Circuit Judge.

(Decided May 12, 1933.)

C. C. GRASSHAM for petitioners.

L. B. ALEXANDER for respondent.

OPINION BY JUDGE DIETZMAN—Granting writ of prohibition.

This is an original proceeding in this court. The petitioner seeks a writ of prohibition, prohibiting the respondent, the judge of the McCracken circuit court, from proceeding further in an equitable action pending in his court, styled Clark-Lack Grocery Co. et al. v. F. E. Lack et al.

In January, 1933, the Clark-Lack Grocery Company, by due action of its board of directors, made an

assignment for the benefit of its creditors, naming F. S. Lack as its assignee. At that time it was indebted slightly in excess of $54,000, of which the major portion was due F. E. Lack. The appraisers appointed by the county court after the assignment appraised the assets of the company at just a little more than $46,000. A financial statement submitted to the board of directors a few weeks prior to this appraisement had indicated assets of the value of $78,000. Whether the difference in value was due to the fact that one set of appraisers was too optimistic or the other was too pessimistic, or that one valued them as part of a going business and the other as the assets of a dead concern, is not disclosed by this record, nor need we in this case inquire. F. E. Lack offered to purchase all of the assets of the company by paying all the debts of the company and the court costs of the assignment. Thus he would acquire the assets for about $55,000. This offer was made after the assignee had secured from the county court authority to sell the assets at public or private sale and after he had notified parties in interest of his intention to sell the property. The offer of F. E. Lack was accepted by the assignee, who reported it to the court. In the meantime, some of the stockholders of the Clark-Lack Grocery Company, including one of the directors who had voted for the assignment, became dissatisfied. After a meeting, they filed the equitable action, the further continuance of which in the circuit court is sought to be prohibited by this proceeding. They then attempted to put the company in bankruptcy, but this failed, as the federal judge indicated there were no more creditors of the company since F. E. Lack had agreed to pay them, and they were satisfied. The dissatisfied stockholders then undertook to file exceptions to the report of sale of the company's assets that had been filed in the county court. After some procedural skirmishing on the part of the parties, not necessary to be here detailed, the court confirmed the sale as though no exceptions had been filed. An appeal was taken, as the statute permits, from that order to the circuit court, and is there pending. Just what powers the circuit court may have in connection with this appeal is not here presented for decision, and we expressly refrain from discussing that question. Turning our attention again to the equitable action filed by the dissatisfied stockholders, we discover that by the

suit it is sought to have the sale of the assets of the grocery company by the assignee to F. E. Lack set aside, a receiver appointed to take charge of the assets, and, to have the estate settled in the circuit court. So far as the record discloses, none of the plaintiffs in this equitable action is a creditor of the company. The assignee is made one of the party defendants. These defendants by their special demurrer and plea in abatement sought to have the equitable action dismissed on the ground that, inasmuch as it was not prosecuted by the assignee or any creditors, the circuit court was without original jurisdiction to proceed further in it; the county court under such circumstances having exclusive jurisdiction to settle the assigned estate subject to the right of appeal from its decisions as the statute permits. The special demurrer being overruled, and the demurrer to the plea in abatement being sustained, and the circuit judge indicating that he would proceed in the equitable action, this suit was brought to prohibit him from so doing.

Section 74 et seq. of the Kentucky Statutes, being chapter 83 of the Acts of 1894, provide for the administration of assigned estates in the county court. Section 23 of the Acts of 1894, as amended by section 2 of chapter 42 of the Acts of 1898, now section 96 of the Kentucky Statutes, in part provides:

"The provisions of this chapter shall not prevent actions to settle estates by the assignee, or by any creditor or creditors representing one-fourth of the liabilities, from being brought in the circuit court: Provided, That whenever a suit involving a settlement of the estate shall be brought in the circuit court of the county in which the assignment is made, the jurisdiction of the county court shall cease, and all papers relating to the estate, and filed in the county court, shall be transmitted by the clerk thereof to the clerk of the circuit court, and by him filed in such suit; and the said circuit court shall have all the power and authority to administer and settle up the assigned estate conferred on the county court by this act, in addition to its power and authority heretofore existing as a chancery court."

This act, and especially this section, was construed in the case of Stoll's Adm'r et al. v. Tarr et al., 141 Ky.

296, 132 S. W. 904, 907. In that case, the assignees of an assigned estate had died. The county court had appointed a successor assignee. The administrators of the deceased assignees brought suit to settle the assigned estate. Their right to do so was challenged. After first deciding that the county court had the authority to appoint a successor assignee, the court then addressed itself to the question of the right of the administrators of the deceased assignees to bring the suit to settle the assigned estate. After holding that the administrators of the deceased assignees neither stood in the shoes of the deceased assignees as assignee of the assigned estate nor were creditors of such, the court held that they had no right or authority to institute the action; section 96 of the Statutes standing in the way. We said:

"If the action in the circuit court allowed by section 96 be brought by any person authorized thereby to bring it, the jurisdiction of the county court over the estate assigned would at once cease, and even the papers relating to the estate filed in the county court would have to be transmitted by the clerk thereof to the clerk of the circuit court, and thereafter any further control of the estate assigned, including the settlement thereof, would be in the hands of the circuit court alone. But if the jurisdiction of that court is invoked, it must be by a person authorized by the section, supra, to do so. * * *

"After all, section 96 is but a limitation upon the jurisdiction of the circuit court to entertain a suit to settle an estate assigned, and unless the action is instituted by the assignee in person, or by a creditor or creditors representing one-fourth in amount of the liabilities of the estate, the circuit court is not permitted to assert jurisdiction.

"That part of the section, supra, which provides that the circuit court shall have all the power and authority to administer and settle the assigned estate conferred on the county court by the act, 'in addition to its power and authority heretofore existing as a chancery court, * * * ' is not susceptible of the construction given it by counsel for appellants. Its only meaning is, that if the circuit court once acquires jurisdiction through the institution

of an action therein by the assignee, or creditors representing one-fourth of the liabilities of the estate, it will not in that event be restricted to such powers and procedure only as may be exercised or followed by the county court under the limitations of the statute in question, but may, in addition to the powers of the county court under the statute, exercise others, not belonging to the county court, but which appertain, independently of the statute, to courts of equity jurisdiction and resort to which might be necessary to effect a speedy and complete settlement of the estate assigned. But it is not to be overlooked that the bringing of the action, by the persons authorized by the statute to do so, is a condition precedent to the circuit court's acquiring jurisdiction at all.''

In the case of Mattingly et al. v. Elder et al. (Ky.) 44 S. W. 215, 216, 19 Ky. Law Rep. 1645, referred to in the Stoll Case under the mistaken citation of Mattingly v. Elder's Ex'x, (Ky.) 44 S. W. 139, 19 Ky. Law Rep. 1647, the court in construing this section 96 of the Statutes said:

''The object of the section supra is manifestly to prevent creditors representing less than one-fourth of the liabilities from bringing suits in the circuit court to settle the estate; and it seems to us that it is a wise and proper provision, and intended and calculated to facilitate settlements of such estates, without incurring the immense bills of cost usually attending the settlement of such estates by suit in the circuit court.''

It would thus seem plain that, unless a suit to settle an assigned estate be brought in the circuit court by the assignee or by creditors representing one-fourth of the liabilities of the company, the exclusive original jurisdiction to settle such assigned estates is in the county court. Further, the removal of an assignee and the appointment of his successor is by section 6 of the Acts of 1894, now section 79 of the Statutes, vested in the county court. This was expressly so held in the Stoll Case, supra. Respondent, however, relies on the case of Goldsmith v. Owen, 95 Ky. 420, 26 S. W. 8, 15 Ky. Law Rep. 806, and Goldsmith v. Fletcheimer (Ky.) 28 S. W. 21, 16 Ky. Law Rep. 432, they being connected cases. In the latter case, this court held, without ref-

erence to the act of 1894, that the court of chancery had inherent jurisdiction to wind up assigned estates and to appoint a receiver thereof. Though this may have been the rule at common law, it is plain that the act of 1894 meant to confine the original jurisdiction of the circuit court to wind up assigned estates to those cases provided for by section 96 of the Statutes. As the two cases relied upon by respondent, though affirmed by this court in November, 1894, were unquestionably tried and decided in the lower court before March 16, 1894, the effective date of the act of 1894, here involved, they do not militate against the conclusions here reached as to the effect of the act of 1894. The case of Husband's Receiver v. Fidelity & Deposit Co., 144 Ky. 93, 137 S. W. 855, is clearly not in point, as respondent impliedly concedes. It follows, therefore, that, inasmuch as the circuit court was without original jurisdiction in the instant case of the equitable action, the writ of prohibition asked for should go. It is so ordered.

Whole court sitting.