## Northern States Contracting Co. et al. v. Swope, Judge.

## Massachusetts Bonding Co. v. Same.

## Swords-McDougal Co. v. Same.

(Decided Dec. 17, 1937.)

STOLL, MUIR, TOWNSEND & PARK, DOHERTY, RUMBLE & BUTLER and R. W. KEENON for petitioners.

J. A. EDGE for interveners.

RICHARD J. COLBERT for King Swope.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Granting writs of prohibition.

These are original proceedings in this court seeking writs of prohibition against the Honorable King Swope, Judge of the Fayette Circuit Court, restraining him from trying a number of like suits pending in that court against the petitioners. The respondent, Judge Swope, has answered that in overruling the petitioners' plea to the jurisdiction of his court and in proceeding to try the cases, he has performed what he conceives to be his duty to do justice to all parties, and submits the issue to this court without opposition. A demurrer has been filed to the response. The petitioners expressly disavow any intention of questioning the good faith of the judge.

The cases involved have been instituted and prosecuted by several hundred plaintiffs against the petitioners seeking to recover of them, in the aggregate, a large sum of money, claimed to be balances due them, severally, as wages for work performed for the contractors in the construction of the new sewer system of Lexington.

We shall refer to the parties as designated in the circuit court.

The plaintiffs have tendered petitions to be made parties in these proceedings which they ask to be considered as their answers to the petitioner's pleadings. They object to the motion to grant the writ of prohibition. The petitioners object to the filing of these answers, claiming that the plaintiffs are neither necessary nor proper parties here. They argue these are special proceedings, authorized by sections 474-479, Civil Code of Practice, and are not civil actions in which, under

the terms of sections 22, 23, and 28 of the Code, persons having an interest in the subject-matter may intervene. Several authorities are cited in support of and in opposition to these objections.

The law as to parties in a proceeding to obtain a writ of prohibition, as given in 22 R. C. L. 28, is that under the common law and the prevailing rule in the United States, where not abolished by statute or controlled by a rule of court, when the suit complained of is brought by a private person, he may be joined as a defendant; but when it is a suit or prosecution in behalf of the government, the writ of prohibition may go to the court only. It has been our practice to permit interested parties other than the judge to file amici curiæ briefs. Since the pertinent and legitimate portions of the tendered pleadings of the interveners only deny the legal effect of the allegations of the petitions and of the several documentary exhibits, we overrule the objections and permit the pleadings to be filed, subject to the consideration of their legal sufficiency, which the objections will be regarded as challenging. It is not required that the court rule upon the question whether a private party may intervene and raise an issue of fact in such a proceeding.

On November 7, 1933, the City of Lexington voted to issue bonds for $1,312,500, the proceeds of which, with the aid of the Federal Government under the provisions of title 2 of the National Industrial Recovery Act of June 16, 1933, 48 Stat. 200, 40 U. S. C. A., sec. 401 et seq., were used in the construction and reconstruction of the sewer system and the making of certain other public improvements. The bonds were held valid in McDonald v. City of Lexington, 253 Ky. 585, 69 S. W. (2d) 1065, and McDonald v. City of Lexington, 253 Ky. 770, 70 S. W. (2d) 534. Contracts were let to Connelly Brothers and to the petitioners herein, Northern States Contracting Company and Swords-McDougal Company by the City of Lexington and the United States for the construction of the sewers. The contractors duly executed bonds for the faithful performance of their undertakings, and special bonds relating to the payment of labormen's wages, with the other petitioners herein as sureties. The contract stipulated:

"All employees directly employed on this work shall be paid just and reasonable wages, which shall be compensation sufficient to provide for the hours

of labor as limited, a standard of living in decency and comfort. The contractor and all subcontractors shall pay not less than the minimum hourly wage rates for skilled and unskilled labor prescribed by the Federal Emergency Administration of Public Works, viz:

"Skilled Labor,—$1.10;
"Unskilled Labor,—$0.45."

The contractors posted and maintained in conspicuous and easily accessible places upon the site of the work a schedule of labor classifications of skilled and unskilled labor, with three intermediate degrees, and with minimum rates for the several groups ranging from $1.10 an hour for skilled labor to 45 cents an hour for unskilled labor. This schedule was prepared and promulgated by the Federal Emergency Administration of Public Works, commonly called PWA. A copy was attached to and made a part of each of the construction contracts. The workmen were paid accordingly.

All the contracts had been fully executed and the work duly accepted by the City of Lexington and the federal authorities by May, 1935. The contractors had moved away and their foremen, as well as the government inspectors and engineers, had scattered over the country. The government had paid to the city as its contribution $392,155.11, representing 30 per cent. of the cost. Six months thereafter the first of these suits was filed in the Fayette circuit court by a group of plaintiffs against the contractors and the sureties on their bonds. It was alleged that the contracts were made for the use and benefit of the plaintiffs; that they were skilled laborers during the terms of their employment; and that the defendants had not paid them wages at the rate of $1.10 an hour, but lesser wages as unskilled workmen. From time to time other suits of like nature were filed either as original actions or as amendments to suits pending. It appears there are 410 plaintiffs. Although the suits were brought in groups, each plaintiff would have to be regarded individually. In one suit it is asked that 1,700 other persons, who, it is stated, had similar claims against the contractors, be summoned to appear and required to assert their claims. In some suits the validity of the city's bonds and of the construction contracts is challenged and it is prayed that the contractors be required to refund to the city the money paid them. The trial court overruled the defendants'

144

demurrers to the petitions and their several motions to elect and to strike. The defendants then filed pleas to the jurisdiction of the court, which were overruled. This has been followed by the filing in this Court of the petitions and motions for writs of prohibition as above stated.

The grounds of the pleas to the jurisdiction are in substance and effect the grounds upon which the writs of prohibition are sought.

Title 2 of the National Industrial Recovery Act was not affected by the decision in what is commonly called the NRA case, in which the Supreme Court held as unconstitutional title 1 of that act, 15 U. S. C. A., sec. 701 et seq., under which Codes of Fair Competition of industry had been promulgated and were being enforced. Schechter Poultry Corp. v. United States, 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947. This portion of the act authorized the establishment of a Federal Emergency Administration of Public Works. It granted very broad powers to the President of the United States and to those individuals and agencies whom he might delegate or appoint as his representatives in order to effectuate the purpose of the act "to increase employment quickly" by loaning and granting financial aid in the construction of public works. Through a series of executive and administrative orders, that power is shown to have been delegated to those agencies with whom the City of Lexington dealt in these projects. See "Executive Orders" appended as notes to 40 U. S. C. A., sec. 414. It appears to have been originally agreed that the government should not only contribute a portion of the cost of the sewers but should also purchase the bonds issued by the city. However, by and with the consent of the government authorities, the bonds were sold to private investors. Nevertheless, under the terms of the "Grant Agreements" it was required that the city should carry out the purposes of title 2 of the National Industrial Recovery Act and that the contracts for the work should be subject to and in accordance with the orders, rules, and regulations of the government, inter alia, in respect of the payment of minimum wages and the observance of maximum hours, and as well for the adjustment of disputes arising between the contractors and the workmen. The laws and the regulations of the government agency thereby became essential portions of the

contracts both by implication and, in a large measure, by express inclusion or reference.

We have already quoted a portion of the contracts relating to minimum wages paid the workmen, and have referred to the schedule or classification promulgated by the Federal Administrator as authorized by Presidential Executive Order No. 6252, 40 U. S. C. A., sec. 414 note. Under the authority vested in him, the Administrator, by an order, provided:

"That there shall be created a Board of Labor Review which shall hear all issues arising under the operation of all contracts financed from funds appropriated by the Administrator of Public Works under the authority of the National Industrial Recovery Act and from such problems as may result from fundamental changes in economic conditions during the life of these contracts. The Board of Labor Review to be created shall consist of 3 members, 1 to represent labor, 1 to represent contractors, and a chairman who shall represent the Federal Emergency Administration of Public Works. The members of this board shall be appointed by the President of the United States but no member shall be connected in any way with any organization of building workers or directly connected with, or have any interest in, contracting. The chairman shall not be in any way connected with the Federal Emergency Administration of Public Works. Decisions of the Board of Labor Review shall be binding upon all parties."

A Board of Labor Review was set up and functioned through its various agencies and local representatives during the entire time the petitioners were employed by the defendants.

It was also provided in the contracts:

"The Board of Labor Review shall hear all labor issues arising under the operation of this Contract and as may result from fundamental changes in economic conditions during the life of this Contract. Decisions of the Board of Labor Review, including decisions as to its jurisdiction to act upon the application of persons not parties to this contract, shall be binding upon all parties."

During all this period, in accordance with the orders of the Federal Administrator, the following no-

tice was posted and continuously maintained in prominent and conspicuous places at the site of the work:

"P. S. 21258.

"Employees who work under more than one classification are entitled to receive for the hours worked on each class of work, the wage rate applicable to the class of work performed. When employees are paid, they should check the amount received and immediately report any shortage to the paymaster. If adjustment is refused, or deferred, the matter should be immediately reported to the PWA Engineer Inspector, who will investigate the claim and see that it is given prompt consideration.

"In all cases, such claims should be reported to the PWA Engineer Inspector within four days after pay day, in order that all just claims may be adjusted on the next payroll.

"[Signed] H. A. Gray
"[Typed] H. A. Gray
"Director, Inspection Division For the Administrator."

Every week each of the plaintiffs had accepted checks as full payment for his labor under the posted schedule and classification. None reported a shortage in wages or claimed a higher classification to the contractor or to any inspector or engineer of the Federal Administration as he had opportunity to do if dissatisfied. The petitioners here maintain, as they did in the circuit court, that the plaintiffs were required to resort to the Board of Labor Review (to be reached by government inspectors stationed on the ground) with any grievances they may have had as to their classification or as to having been underpaid by reason thereof. Not having done so, it is argued, they cannot, as an original step, now sue for a recovery of additional wages because of what they allege were wrongful classifications of themselves as unskilled laborers.

The plaintiffs, as intervening respondents, maintain the court does have jurisdiction. They confine their argument to the proposition that litigants may not be deprived of their day in court; that there are legitimate issues in the Fayette circuit court as to validity of ordinances and other allegations; that the work was not a federal project, hence was not controlled by the laws

and regulations of the Public Works Administration. This contention seems to be rested upon the conceptions that the act of Congress is unconstitutional; that the ordinances under which the bonds were issued and under which the contracts were executed were invalid; and that by reason of the sale of the bonds to private investors instead of the United States, the contracts became strictly private as between the city and the contractors and their sureties. And yet their causes of action must of necessity rest upon the very contracts they would destroy. It seems to us the trial court should have required them to elect as between their attack upon the validity of the contract, the benefits of which they were seeking, and their claims asserted against their employers. It seems to us also that many of their allegations and denials might well have been regarded as sham pleading and accordingly stricken.

We shall not undertake to pass upon the validity of the laws or contracts, but in a manner, electing for the plaintiffs, we shall proceed to determine the question of jurisdiction of the circuit court upon the assumption that the contracts are entirely valid, and with respect to the matter of wages inured to the benefit of the plaintiffs.

Thus we finally come to the point. Having by their contracts agreed to submit their claims for additional wages to the United States Board of Labor Review, did the plaintiffs thereby deprive the Fayette circuit court of jurisdiction to hear their causes without resort having been made to the adopted and agreed remedy?

It is not necessary to go out of our own jurisdiction for authority for the general proposition that one who sues on a contract made for his benefit must accept the contract as made. Equitable Life Assurance Society v. Hall, 253 Ky. 450, 69 S. W. (2d) 977; Sun Indemnity Company v. Dulaney, 264 Ky. 112, 89 S. W. (2d) 307. One may not select the desirable morsels served by his contract and toss the less choice parts beneath the table. We have a class of cases close to but falling short of reaching the precise question before us. Of such are disputes of members of fraternal organizations, or where the parties had agreed upon methods of arbitration. They relate to purely contractual relations and involve no statutory regulation. In them the courts do have jurisdiction to determine whether the parties should under their contracts have resorted in the first

instance to their own tribunals. There is a distinction where there is a mandatory statute.

More analogous to the question of jurisdiction of courts to take hold and go forward are cases coming under the Workmen's Compensation Act, Ky. Stats., sec. 4880 et seq. The operation of a master and servant operating under it is regarded as being the voluntary agreement to resort to the Workmen's Compensation Board for the settlement of any claims for personal injuries sustained in the course of and in the scope of the employment, even though the master's negligence was the cause of the injury. That board, like the Federal Board of Labor Review, is a tribunal created by and functioning under a statute. By the concurring operation of the statute and the contract of the parties, the courts are deprived of jurisdiction under such cases until the stipulated remedies have been exhausted. Phil Hollenbach Company v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524; Ashland Iron & Mining Co. v. McDaniel's Dependents, 202 Ky. 19, 258 S. W. 943; Moore v. Louisville Hydro-Electric Company, 226 Ky. 20, 10 S. W. (2d) 466.

Not unlike are the rulings pertaining to the necessity of grievances being submitted originally to the Railroad Commission, Public Service Commission, the Commissioner of Motor Vehicles, and such other statutory tribunals, the procedural provisions of the several statutes depriving the courts of initial jurisdiction in many particulars.

Our case of Norfolk & W. Railway Co. v. Harris, 260 Ky. 132, 84 S. W. (2d) 69, 71, is still closer. There a railroad laborer sued for the difference in wages due him because of the failure of the railroad company to recognize his seniority right to a better place. It was held that he had no right to resort to the court without having pursued his remedies before the railway brotherhood or labor union tribunals, which, under the United States Railway Labor Act (45 U. S. C. A., sec. 151 et seq.), had been designated as the agency of the National Railroad Adjustment Board, created by the act of Congress, for the adjustment of such disputes. We there said:

"It cannot be disputed that the constitution and by-laws of the brotherhood and its agreement with the railway company provide the exclusive machinery

for the hearing and determining the subject here presented, and that an employee who is denied his claim by these tribunals is accorded a right of an appeal to the authority created by, and existing under, 44 Stat. 577, Federal Railway Labor Act 1926 (see 45 U. S. C. A., sec. 151 et seq.).''

The case has been followed in Reed v. St. Louis S. & W. Railroad Co., Mo. App., 95 S. W. (2d) 887; Swilley v. Galveston, H. & S. A. Railway Company, Tex. Civ. App., 96 S. W. (2d) 105; J. E. Wyatt v. Kansas City Southern Railway Company, Tex. Cix. App., 101 S. W. (2d) 1082. See, also, Harrison v. Pullman Company, 8 Cir., 68 F. (2d) 826; Cousins v. Pullman Company, Tex. Civ. App., 72 S. W. (2d) 356.

In Montana State Federation of Labor v. School District No. 1, Helena, D. C., 7 F. Supp. 82, 83, suit was filed by a labor union and some of its members charging that the defendants, the school trustees, in order to secure the benefits of title 2 of the National Industrial Recovery Act and obtain a federal grant in the construction of a building, had approved a wage scale contrary to the act of Congress because less than it required. On behalf of themselves and all workmen likely to be employed in the erection of the building, the plaintiffs sought an injunction to restrain such alleged unlawful practice. The court analyzed the various provisions of the National Industrial Recovery Act (48 Stat. 195), particularly as to the Board of Labor Review and its power to determine all labor issues, and held:

''The Act is a grant, gift or donation of benefits, and also is a law. Like all grants it is more political and administrative than judicial, and though no one is obliged to accept its benefits, if they accept they are subject to all its terms. That is, who takes the benefits, takes the burdens, and accepting the grant they agree to satisfy its conditions, perform its covenants, abide by its procedure for administration.''

It was held further that the plaintiffs were bound to exhaust the remedy afforded by the regulations and to appeal to the Board of Labor Review before resorting to the court. It was observed:

''The obvious reason is that until the political or administrative function is concluded, the judicial function cannot properly be invoked or interfere.

150

Many illustrations appear in the matter of public lands, taxation, rate making, licenses and the like. Wherein the regulations declare the decision of the Board of Labor Review (the President's alter ego) shall be binding, means no more than this. * * *

"It follows in this case that if defendants accept the government's money they are bound to pay the wages by the Act stipulated; and it likewise follows that if they do not, plaintiffs' members to be employed may coerce them to do so, but are equally bound to resort first to the Board of Labor Review, and, second, if necessary, to the court."

The Act of Congress of March 3, 1931, 46 Stat. 1494, before amendment of August 30, 1935, 40 U. S. C. A., sec. 276a, relating to contracts which required or involved the employment of laborers in the construction, alteration, or repair of government buildings, was in substance and effect the same as the federal statute under consideration here. The act provided that every such contract should contain certain conditions concerning the rates of wages to be paid as established by the Secretary of Labor, and a further condition that in case any dispute arose as to the applicable rate, which could not be adjusted by the contracting officer, the matter should be referred to the Secretary of Labor for determination, and his decision thereon should be conclusive upon all parties to the contract. It was held without exception, so far as we are advised, that the right being given and the remedy prescribed by statute, that exclusive remedy must be pursued in the forum so fixed, and that the courts were without authority to pass upon those disputes. United States for Use of Wylie v. W. S. Barstow & Co., 4 Cir., 79 F (2d) 496; United States for Use and Benefit of Boucher v. Murphy, D. C., 11 F. Supp. 572; Steward v. A. W. Kutcshe & Co., 168 Tenn. 133, 76 S. W. (2d) 315; A. W. Kutsche & Co. v. Anderson, 169 Tenn. 98, 83 S. W. (2d) 243; A. W. Kutsche & Co. v. Keith, 169 Tenn. 399, 88 S. W. (2d) 454.

The conclusion is that by mandatory operation of the federal statute and the regulations (statutory in character) under which the plaintiffs brought themselves by their voluntary agreement in accepting employment under the terms of the contracts, the Fayette circuit court is without jurisdiction to hear or determine their various causes of action. The demurrer to

Judge Swope's response and the objections to the intervening petitions of the plaintiffs are sustained.

Such being the view of the court, no question can be raised as to its power to control the action of the circuit court by a writ of prohibition. Section 110, Kentucky Constitution; Rush v. Denhardt, 138 Ky. 238, 127 S. W. 785, Ann. Cas. 1912A, 1199; Clark-Lack Grocery Company's Assignee v. Price, 249 Ky. 150, 60 S. W. (2d) 372.

Writs will issue prohibiting the respondent from proceeding further in the cases, except to enter such orders as may be consistent with the views expressed in this opinion.

Whole court sitting.