ACCEPTED
03-14-00749-CV
4377534
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/4/2015 5:26:08 PM
JEFFREY D. KYLE
CLERK

**NO. 03-14-00749-CV**

**IN THE COURT OF APPEALS FOR THE**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

**THIRD JUDICIAL DISTRICT, AUSTIN** 3/4/2015 5:26:08 PM

JEFFREY D. KYLE
Clerk

**THE UNIVERSITY OF TEXAS AT AUSTIN,**

**APPELLANT**

**V.**

**WILLIAM A. BELLINGHAUSEN, JR.,**

**APPELLEE**

_____

On Appeal from the 345th Judicial District Court of Travis County
_____

APPELLEE'S BRIEF

_____

**Counsel for Appellee**
Robert L. Ranco
SBN: 24029785
The Carlson Law Firm, PC
11606 N. IH-35
Austin, TX 78753
(512) 346-5688
(512) 719-4362 (fax)
Rranco@carlsonattorneys.com

# Table of Contents

TABLE OF AUTHORITIES ............................................................................2

SUMMARY OF THE ARGUMENT .............................................................5

ARGUMENT .................................................................................................9

    I. Standard of Review ...............................................................................9

    II. There Is Evidence That UT-Austin Knew That An Unreasonably Dangerous Condition Existed At The Place And Time Bellinghausen Fell ...........................9

        A. Direct Evidence Exists That UT-Austin Knew That An Unreasonably Dangerous Condition Existed Mere Hours Before The Incident In Question..10

        B. Circumstantial Evidence Creates a Better Picture of Appellant's Knowledge of the Dangerous Condition .................................................................13

        C. Officer Gonzalez's Report Creates A Fact Issue Regarding Whether UT-Austin Knew Of The Unreasonably Dangerous Condition .............................17

        1. Henry Saw The Dangerous Condition .........................................................17

        2. Officer Gonzalez Identified The Same Protruding Crack ...........................18

        3. The Inattentiveness Is A Fact Question, And Circumstantial Evidence Supports Knowledge Of The Crack ................................................................20

        4. Henry Saw Someone Fall On The Crack And Knew That Cracks Existed All Over The Campus. Therefore A Reasonable Jury Could Find That Henry Knew Of The Dangerous Condition, But Bellinghausen Did Not. ..................21

        5. Henry's "Clarification" Creates A Fact Issue..............................................22

PRAYER ......................................................................................................24
CERTIFICATE OF SERVICE .....................................................................25
CERTIFICATE OF COMPLIANCE.............................................................26

# TABLE OF AUTHORITIES

**Cases**

*Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989) ....................................................9

*City of Corsicana, v. Stewart*, 249 S.W.3d 412, 414-15 (Tex. 2008) ............... 10, 15

*City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) ............................14

*City of Houston v. Harris*, 192 S.W.3d 167 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ...............................................................................................13

*City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 537 (Tex. 1996) .............. 11, 16

*Hammerly Oaks Inc. v. Edwards*, 958 S.W.2d 387, 392, 392 (Tex. 1997) .............17

*Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex 2001) ..................................................9

*Marathon Corp v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003) ............... 9, 17, 19, 20

*Reyes v. City of Laredo,* 335 S.W.3d 605, 608-609 (Tex. 2010) ............................14

*Rice Food Market, Inc. v. Hicks¸* 111 S.W.2d 610, 613 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ....................................................................... 13, 14

*State v. Gonzalez*, 82 S.W.3d 322. 330 (Tex. 2002) ...............................................10

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.2d 217, 227 (Tex. 2004) .......9

*University of Texas-Pan American, v. Aguilar*, 251 S.W.3d 511 (Tex. 2008) ........14

**Statutes**

TEX. R. CIV. P. 266a ..................................................................................................11

Tex. R. Evid. 702 ......................................................................................................17

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would likely not assist the Court in the instant case. The existence of a fact question regarding actual notice is clear. Regarding whether or not Appellant had actual knowledge the witness testified:

> Q. And then towards the bottom it says, "A facility staff member, David Henry was working nearby all morning and said that he saw another person trip and fall on the same protruding crack about 9:00 A.M." Do you remember telling the officer that?

> A. Yes Sir.   (CR 266; 40:1-6).

Granting oral argument and thus intimating that the court needs further explanation on this point would only serve to validate the outrageous suggestions and prism of truth through which the Defendants present their motion.   Nevertheless, Appellee is prepared for oral argument if the court deems it necessary.

3

NO. 03-14-00749-CV

IN THE COURT OF APPEALS FOR THE

THIRD JUDICIAL DISTRICT, AUSTIN


THE UNIVERSITY OF TEXAS AT AUSTIN,

APPELLANT

V.

WILLIAM A. BELLINGHAUSEN, JR.,

APPELLEE

On appeal from the 345th Judicial District Court of Travis County

Appellee's Brief

TO THE HONORABLE THIRD COURT OF APPEALS:

All credibility, all good conscience, all evidence of truth comes only from the senses.
- Friedrich Nietzsche

When David Henry said "Right there" it can mean "right there." That a witness stated that something occurred "right there," and that statement may have been altered, clarified, or even retracted, the original statement only points to that issue of credibility. A reasonable jury could determine that right there means right there. As credibility of a witness is the definitive jury issue, it is for the jury to decide whether or not to trust Henry's initial statement or to grant greater weight to

the clarification. That the witness statement could be interpreted to mean different things does not mean that no reasonable fact finder could determine that Appellant had knowledge of the unreasonably dangerous condition.

It is undisputed that an employee of The University of Texas at Austin saw someone fall in the general area where Mr. Bellinghausen fell mere hours before the incident in question. It is also undisputed that he told the investigating officer immediately following the incident that he saw someone fall "right there" and that he fell on "the same protruding crack." Relying on this testimony, any reasonable fact finder could find Henry saw the incident occur on the same crack. Because Henry saw someone fall on the same crack he and UT-Austin had actual knowledge of the unreasonably dangerous condition. Therefore Defendant's Plea to the Jurisdiction was properly denied.

## SUMMARY OF THE ARGUMENT

The argument can best be summarized by the opinion of the trial court. In a letter accompanying the order, the court reasoned:

> There is evidence that the University had actual knowledge of the hazard. It is rare to have one person witness two people fall in any proximity to one another. Even rarer to have the witness' recorded statement at the scene. Corrections, qualifications, or clarifications cannot undo the factual question. Credibility becomes the issue. (CR 315).

5

This is a rare fact issue. Premises cases so often revolve around circumstantial evidence to create actual knowledge. This is not that case. An employee of the Appellant saw someone fall, on the same crack mere hours before the incident in question. As part of a statement to the police he was recorded to say that someone fell "right there." The police officer, to whom the witness spoke, identified that Bellinghausen fell on the same protruding crack as the prior fall. A reasonable fact finder could very easily read the phrase "right there" and "the same protruding crack" to mean those plain language phrases and that Appellant had knowledge of the unreasonably dangerous condition prior to the incident in question. Therefore, Appellant's plea to the jurisdiction was properly denied.

Pragmatic organization of the relevant evidence would be to separate the evidence into "pre-deposition evidence," i.e., the evidence that was available and undisputed before the deposition of David Henry, and "deposition evidence," i.e., the modifications Mr. Henry made to that evidence during his deposition.

The pre-deposition evidence consists primarily of information available in the police report and on the audio recording from the scene of the incident. In reviewing these items, the following are uncontroverted:

1) Mr. Henry told the police officer at the scene that Mr. Bellinghausen's fall was the second time today that someone had fallen. (CR 276;50:10)
2) Mr. Henry told the police office that the guy who fell earlier fell "right there." (CR 276; 50:20-23)

6

3) Mr. Henry told the police officer at the scene he saw another person trip and fall on the same protruding crack about 9:00 a.m. (CR 266; 40:1-6)
4) Mr. Henry saw someone fall around "right there" around 9:00 a.m. (CR 279; 53:7-10)
5) Mr. Henry said the other person who fell was in his 30s or 40s. (CR 279; 53:11-15)
6) Mr. Henry saw the other guy fall on all fours. (CR 279; 53:16-18)
7) Mr. Henry told the police officer "We've got a lot of [uneven expansion joints] on campus." (CR 281; 55: 9-11)
8) The investigating police officer, who had the benefit of Mr. Henry's words, as well as everything else incumbent in personal interaction with an eyewitness such as nonverbal communication, wrote the report indicating that another person had fallen, pursuant to Mr. Henry's description, on the "same protruding crack" earlier.

Nothing in the police report nor on the audio recording suggests that Mr. Henry's understanding that the earlier fall occurred on the same protruding crack was a new realization after the Bellinghausen fall. There is no indication that Henry realized the condition existed only after the second fall.

Moreover, the fact finder must ask herself: Why did Mr. Henry leave the scene of his work to talk to the investigating police officer at the scene of the Bellinghausen fall? This fall occurred outside of Mr. Henry's work zone at U.T. (CR 249; 23: 7-8) Mr. Henry did not witness the fall as he had witnessed the earlier fall. Mr. Henry did nothing to assist Mr. Bellinghausen. Mr. Henry has no medical training. EMS and police were on the scene to take care of the injured man. The sole reason Mr. Henry left his post and talked to the police officer- indeed, the only thing he accomplished during that detour from primary duties- was to inform the

7

investigating officer that this was the second fall of the day "right there" on the "same protruding crack."

All of the pre-deposition evidence supports a dispositive finding as to actual notice prior to the Bellinghausen fall. There is no genuine issue of material fact on this issue prior to the Henry deposition. All evidence indicates that Henry and UT-Austin knew after the first fall that an attentive, phoneless pedestrian tripped on the same dangerous crack hours before Bellinghausen.

It is only Henry's deposition testimony, three years after the incident that re-casts this evidence and where we first encounter the notion of a possible later understanding of the dangerous condition. It is in the deposition that Mr. Henry, for the first time, suggests that the first fall involved a potentially distracted man using his cell phone. None of this information was conveyed to the police officer at the scene. Mr. Henry, who was so intent at the scene of the fall to assist the officer in his understanding by drawing parallels between the two falls, had a decidedly different approach after being prepped for deposition by his attorneys. It is only this change that raises the fact issue.

There lies the fact issue. A jury could rely on the earlier statement where he told the officer that someone fell on the same protruding crack, and determine that knowledge arose prior to the incident in question. That a fact issue exists means the Plea to the Jurisdiction was properly denied.

## ARGUMENT

### I. Standard of Review

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the court can consider relevant evidence to resolve the issues raised. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.2d 217, 227 (Tex. 2004). If the evidence presented creates a fact question then the court many not grant the plea. *Id.* at 228. All evidence favorable to the nonmovant is to be taken as true. *Id.* at 228.

This is similar standard to a motion for summary judgment. *Id*. It is important to note that in a summary judgment motion if the credibility of the witness is likely to be a dispositive fact in the resolution of the case, summary judgment is not appropriate. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989). To support a finding of material fact on a record that includes only slight circumstantial evidence there is need for "something else" to make one fact more probable than another. *Marathon Corp v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003) (quoting *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex 2001)).

### II. There Is Evidence That UT-Austin Knew That An Unreasonably Dangerous Condition Existed At The Place And Time Bellinghausen Fell

**A. Direct Evidence Exists That UT-Austin Knew That An Unreasonably Dangerous Condition Existed Mere Hours Before The Incident In Question**

David Henry saw someone fall in the same area mere hours before the incident in question (CR 307). This knowledge is then imputed to UT-Austin. Appellant does not deny Henry's employment or that the knowledge would be imputed to them. Rather, Appellant only denies the facts of which David Henry knew.

Actual knowledge requires knowledge that the dangerous condition existed at the time of the incident. *City of Corsicana, v. Stewart*, 249 S.W.3d 412, 414-15 (Tex. 2008). It can be obtained from direct or circumstantial evidence. *Id.* Circumstantial evidence establishes actual knowledge when it "either directly or indirectly" supports that conclusion. *Id.* (quoting *State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002). For example, it could not be inferred that TxDOT knew traffic signs would be missing merely because they knew stop signs could be repeatedly vandalized. *Gonzalez,* 82 S.W.3d at 330. Without direct evidence, merely knowing it was raining and knowing there was flooding in the area does not create an inference that the City of Corsicana knew the specific crossing was a dangerous condition. *Stewart*, 249 S.W.3d at 415-16. More circumstantial evidence makes the inference more reasonable. When City of San Antonio employees knew rain would drip to the floor through leaks, coupled with knowledge of the leaks in the vicinity

10

of the hazard, and that it was raining, the Court held that a reasonable fact finder could find that the city had actual knowledge of the dangerous condition. *City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 537 (Tex. 1996).

Here, direct evidence exists regarding Defendant's actual knowledge of the unreasonably dangerous condition. David Henry knew of the dangerous condition prior to the incident in question. While working nearby he saw someone fall on the same sidewalk. (CR 252, 26:23-25). He reported to Sgt. Gonzalez that "he saw another person trip and fall on the same protruding crack about 9:00 AM" (CR 266; 40:1-6). Although not in the police recording, Henry testified to telling the officer this very statement. (CR 266; 40:1-6) Henry told the officer that the subject appeared to be a white male in his mid 30s, and that he fell forward and ended up on all fours. (CR 266; 40:7-10).

Based on this direct evidence, a reasonable fact finder could determine that Henry had actual knowledge of the dangerous condition at the time of the incident in question. Therefore, Appellant had actual knowledge of the dangerous condition and the Plea to the Jurisdiction was properly denied.

Three years later David Henry's story changed. To the extent his testimony changed, this is an issue of his credibility and a question for the jury. *See*, TEX. R. CIV. P. 266a. The inconsistencies include:

| Day of Incident (8/28/2011) | Day of Deposition (8/20/2014) |
| --- | --- |
| Saw him fall "right there"(CR 293; 67) | Intent was to actually say somewhere near there (CR 294; 68:11-15) |
| "same protruding crack"(CR 266; 40:1-6) | "I wouldn't say it was the same point, I would say in the same vicinity." (CR 255; 29:2-13) |
| No mention that the prior fall victim was on his phone or inattentive. (CR 307) | The man appeared to be "checking voicemail or texting." (CR 252; 26:18-22). |

Somehow after three years of time Henry's story became more detailed and nuanced. "Right there" became "same vicinity." Notably, Henry never says that the first fall did not happen on the same crack, only that he cannot guarantee the first victim tripped on the same crack (CR 255; 29:16-20). He also does not deny saying "right there." A cell phone appeared in the prior fall victim's hand and he was either texting (a task that usually requires looking at the phone) or checking voicemail (a task that requires listening to the phone). Henry now adds details he found unimportant while watching a man bleeding on the sidewalk. He also decided not to tell these important facts to the investigating police officer. Conveniently, the details added were also only those to make the existence of actual knowledge more

12

suspect. These inconsistencies, changes, recantation, clarifications, or obfuscations (depending on your perspective) only create issues of credibility for the jury to decide on the matter of UT-Austin's actual knowledge. The jury could believe Henry's statement at the time of the incident or the one three years later. Believing the first story is not an unreasonable inference, nor is it a stack of inferences. It would be more reasonable to believe the one made near the time of the incident. Because it is a fact question regarding Defendant's knowledge, the plea to the jurisdiction was properly denied.

### B. Circumstantial Evidence Creates a Better Picture of Appellant's Knowledge of the Dangerous Condition

Appellant addresses Henry's deposition testimony and tries to paint away that he said initially "right here." Assuming *arguendo* all clarification are still read in the light most favorable to the Appellant, something the court must do the opposite of, there is still a clear picture of circumstantial evidence that can only point to Appellant's actual knowledge of the dangerous condition.

The existence of prior incidents is a fact to consider when determining whether Defendant had prior actual knowledge. *City of Houston v. Harris*, 192 S.W.3d 167 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The court may also consider whether there were prior similar incidents. *Rice Food Market, Inc. v. Hicks¸* 111 S.W.2d 610, 613 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

13

The more recent the similar incident the more favor it points towards actual knowledge. *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (finding that because the last similar incident was over three years ago this did not create actual notice).

A review of case law cited by Appellant finds no case similar to the one at bar. Each case lacks a fundamental element that is unique to this one: an employee of the entity saw a prior fall in the same vicinity hours before the incident in question. In *Thompson*, a cover plate had a habit of coming loose and the court found without more evidence the City did not have actual knowledge of the dangerous condition. 210 S.W.3d at 602. Though employees walked across it no one fell that same day or saw someone fall that same day. *Id.* In *Reyes*, knowledge that a low-water crossing tended to flood without more was no evidence to support actual knowledge. *Reyes v. City of Laredo,* 335 S.W.3d 605, 608-609 (Tex. 2010). Once again, no evidence was presented that an employee witnessed the condition. *Id*. In *Aguilar*, guidelines in the safety manual did not create actual knowledge of the dangerous condition. *University of Texas-Pan American*, *v. Aguilar*, 251 S.W.3d 511 (Tex. 2008). No evidence was presented that an employee saw the condition. *Id.* In *Hicks,* a representative of defendant testified that he knew of no similar incident. 111 S.W.3d at 613. No evidence was presented that an employee saw a similar incident. *Id.* No case presented includes a similar fact pattern. It is

14

likely because the statement of an employee similar to that of Henry's tips the knowledge argument over the edge. UT-Austin had knowledge prior to the incident in question.

Appellant does not dispute that there were uneven sidewalks all around the UT-Austin campus. (CR. 139;35:18-36:4). David Henry knew about them prior to the two falls. (CR 256; 30:8-10). It was  common knowledge this is what happens with expansion joints. (CR 256; 30:14-16). He was also aware that this can occur around tree roots. (CR 257; 30-17-24). This was also not an event that occurred overnight, but something that would take considerable time. (CR 259; 33:3-13). This is circumstantial evidence can be used to show actual knowledge. *See*, *Stewart*, 249 S.W.3d at 414. Couple the knowledge of the cracks with Henry's knowledge that someone fell in the general vicinity of the area where Bellingshausen fell and a reasonable fact finder could determine UT had actual knowledge of the unreasonably dangerous condition.

If Henry only identified someone fell in the area, at the time of Mr. Bellinghausen's fall, David Henry and UT-Austin knew the following:

(1) there were uneven sidewalks all across campus;

(2) it was a common occurrence with expansion joints;

(3) cracks of this nature took considerable time to make

(4) the uneven sidewalk can be caused by trees;

(5) there was a tree in the area; and

(6) someone fell in the same vicinity of Mr. Bellinghausen.

This alone is enough for a reasonable fact finder to determine that Appellant had actual knowledge of the unreasonably dangerous condition. In *Rodriguez*, the Texas Supreme Court held that the City's knowledge of leaks in the roof coupled with its knowledge that it had been raining meant "the jury might have inferred that the person in charge knew that there would be water on the floor." *Rodriguez*, 931 S.W.2d at 537. The Court reasoned that the jury could decide the issue based on the position of the leaks above the floor. *Id.* That situation is less knowledge than the case at bar. What we have is essentially a rainy day, with knowledge of leaks, and then seeing someone slip on the floor. Similar to *Rodriguez*, the jury could decide the issue based on the position of "right here" and "the same protruding crack." Therefore, a material fact issue exists regarding Appellant's knowledge of the dangerous condition.

Knowledge that there were uneven sidewalks all across campus, that they could be made by tree roots, and that there was a tree nearby makes seeing the initial fall and connecting it to the crack a more reasonable inference for Henry and a jury to make. When Henry saw the first fall on a sidewalk he could draw the conclusion that the person tripped on the thing he saw all around campus sidewalks, near the tree that may cause cracks. This is a reasonable inference. If,

16

however, the first victim tripped on a rake, connecting it to a dangerous condition on campus would have been a stretch. Henry could not think that dangerous rakes existed all across campus. Nevertheless, when he saw someone trip on something he knew existed all across campus, a reasonable fact finder could determine that he saw someone fall on the same crack. Appellant's actual knowledge of the cracks around campus makes one inference "more probable than another." *Pitzner*, 106 S.W.3d at 729 (quoting, *Hammerly Oaks Inc. v. Edwards*, 958 S.W.2d 387, 392, (Tex. 1997)). Because the broader circumstantial picture supports the underlying direct evidence, the plea to the jurisdiction was properly denied.

## C. Officer Gonzalez's Report Creates A Fact Issue Regarding Whether UT-Austin Knew Of The Unreasonably Dangerous Condition

### 1. Henry Saw The Dangerous Condition

There is no testimony supporting that it was impossible for Henry to see the crack that far away. Henry does not state he could not see it nor does any expert opinion support that fact. Tex. R. Evid. 702. Henry's testimony that he told the officer the first fall occurred on the same protruding crack negates this inference. (CR 266; 40:1-6).

Following Appellant's analogy, if a referee made a call from the end zone it may be reason to throw the challenge flag. That does not make the call unreasonable or wrong. The other referees would look at the replay and determine what happened. Nevertheless, when the tape says the fall occurred "right there" the

17

other referees would back the initial call. In the parlance of the NFL the ruling on the field stands.

Moreover, evidence suggests that Henry did see the crack. After Bellinghausen fell, Henry went over to see what was going on. (CR 248; 22:22-23:1). He went over at or near the same time the officer arrived (CR 249; 23:17-19). He offered information to Sgt. Gonzalez of his own fruition, and likely offered the information he thought relevant. He told the officer about the similarity of the falls and that it happened right there likely because he was worried of this happening again. He would have no other reason to do so. This behavior coupled with the prior discussion of the many things he knew about the campus and cracks in the sidewalk could lead a reasonably jury to believe he saw the unreasonably dangerous condition.

### 2. Officer Gonzalez Identified The Same Protruding Crack

Appellant details a possible solution regarding how Officer Gonzalez came to identify the same protruding crack. In short, he placed the phrase into the report based on the interview of David Henry, his review of the scene, and his investigation. It is a good story. Appellant, however, cannot point to evidence in the record detailing that this story is how the events happened. More importantly to the extent it is a story, it is a credibility issue for the jury. Henry distinctly remembers telling the officer that he saw another person trip on the same protruding crack.

Q. And then towards the bottom it says, "A facility staff member, David Henry was working nearby all morning and said that he saw another person trip and fall on the same protruding crack about 9:00 A.M." Do you remember telling the officer that?

A. Yes Sir.   (CR 266; 40:1-6).

That Officer Gonzalez identified the same protruding crack supports the fact that a reasonable fact finder could find that Appellant had actual knowledge of the dangerous condition. Officer Gonzales saw the incident where the location occurred. (CR 307). He took the photographs of the crack and the sidewalk. (CR 307). He also spoke to David Henry. (CR 307). As a witness he would have seen Henry's facial expressions, what he may have pointed to, tone of voice, and any other specific detail about the situation. Based on this information he reasoned that Henry saw someone fall on the same protruding crack. If inferences were made he made reasonable ones based on his knowledge of the scene. As he was in all likelihood a reasonable person a similarly placed reasonable fact finder could find that Appellant saw someone fall on the same unreasonably dangerous condition prior to the incident.

This is not the stack of inferences identified by the Appellant. In *Pitzner*, the Court held that the long chain of suppositions and hypotheses was not enough to create a fact issue. *Marathon Corp.*, 106 S.W.3d at 729. The court outlines six facts that must have occurred for the incident to have happened as the plaintiff's expert detailed. *Id.* There were too many other possible causes of the limited physical

19

evidence that were just as likely, therefore the inferences were not reasonable. *Id.* This is not a similar unsupported chain because Henry's statement regarding the prior incident as well as his knowledge thereof support every inference regarding UT-Austin's knowledge of the condition.

**3. The Inattentiveness Is A Fact Question, And Circumstantial Evidence Supports Knowledge Of The Crack**

Henry only decided to include in his story of the prior fall that the victim was on a cell phone when he retold the story three years after the incident in question. At the time of the incident, he only told the officer that the man landed on all fours. (CR 307). He did not tell him why he fell on all fours, detail a dropping of a phone, or give any details regarding the phone. It's a suspicious and important detail to forget. A jury could easily decide that the earlier statement is simply more credible. It happened closer to the time of the incident, it was spoken to a police officer, and it did not have the usual taint of protracted litigation. Appellant did not cite case law, nor does there appear to be any that the addition of a cell phone three years after the fact means as a matter of law one existed or that the pedestrian was inattentive. Because the phone usage of the prior fall victim is in dispute a fact issue still remains regarding Appellant's knowledge of the dangerous condition.

Moreover, assuming again that Henry's later statement is true, couple this with his additional knowledge that cracks existed all around campus, and he did have reason to believe the prior victim tripped on a crack. There were not rakes, or sticks, or protruding pipes all over campus. There were cracks in the sidewalk of which he and UT-Austin knew. Seeing someone trip on a sidewalk known to be littered with cracks, it is then reasonable to believe he tripped on a crack. Couple this knowledge with the large nearby tree, a factor caused in the creation of cracks and visible in the photos, and any reasonable person could see even that the prior victim tripped on a crack. Because evidence supports that Henry knew the prior fall was caused by the crack the Plea to the Jurisdiction was properly denied.

**4. Henry Saw Someone Fall On The Crack And Knew That Cracks Existed All Over The Campus. Therefore A Reasonable Jury Could Find That Henry Knew Of The Dangerous Condition, But Bellinghausen Did Not.**

Appellant contends that for Henry to have seen the dangerous condition Bellinghausen must have as well, if only because Bellinghausen was closer to the crack. This is a misstatement of the evidence because distance is not the only difference between Bellinghausen and Henry.

First, Henry testified that he was actually looking at the area when he saw the first victim fall. (CR 252; 26:23-25). Looking at the area is the first step to seeing something in the area. Bellinghausen was not looking at the area prior to the time he

21

fell, so he simply could not have seen it. To presume Bellinghausen saw something when he was not looking in the area is the absurdity.

Second, Henry knew there were cracks in the sidewalk all across campus.(CR 256; 30:8-10). Henry would have had a reason to notice something in the sidewalk and a reason to look at the sidewalk. Bellinghausen was not gifted with similar foreknowledge. He would not be looking for something of which he was unaware. To presume Bellinghausen saw something of which he was not looking in an area at which he was not looking is again, absurd.

There is no reason, factually or legally, to impose knowledge on Bellinghausen simply because of his general proximity to the condition. Such a result would dismantle the issue of actual knowledge making every employee knowledgeable about the dangerous conditions around him. Because there is no evidence supporting the inference Bellinghausen knew of the condition, and such an inference would be absurd denial of the plea to the jurisdiction is proper.

## 5. Henry's "Clarification" Creates A Fact Issue

A fact issue exists about Henry's clarification simply because there are inconsistencies of the statement. The day of the incident he said "right there" but three years later Henry now purports to realize what he meant to say was general vicinity. Though UT-Austin tries to paint these as consistent, that simply is not the case. If these were two contracts we would use plain language to interpret them

22

and a clear inconsistency exists. If Henry were hired to plant trees "right there" but planted them in the general vicinity he would likely get fired. Similarly, for Henry to say the general vicinity and clarify the very meaning of his words creates an inconsistency in his statement and a fact question for the jury to ultimately determine.

Moreover, though the words stated cannot be disputed, how the words were said can be. Officer Gonzalez saw how the words were said and determined that Henry meant the same protruding crack. Now after three years Henry means something different. This adds more fuel to the fire that is the underlying credibility issue.

## **CONCLUSION**

The issue of actual notice exists on a continuum. At the far ends of the continuum, each party could present a dispositive motion on the issue and expect to succeed. In the much larger middle section, a fact question exists. The Attorney General's office would have the Court believe that the deposition testimony swung the pendulum on this issue decidedly and irrefutably into the area of their favor at the far end of that that continuum. It is clear, however, that the recantation and modification of the pre-deposition evidence does not eliminate that evidence, it only serves to muddy his testimony and create a credibility issue for Mr. Henry.

A reasonable jury could determine that seeing someone fall "right there" means that he saw someone fall "right there." When you then add that David Henry and UT-Austin knew that there were cracks in the sidewalk, a reasonable fact finder could determine that the university had knowledge of the dangerous condition. Because there is a genuine fact dispute the trial court properly denied UT-Austin's plea to the jurisdiction.

## PRAYER

The Court should affirm the trial court's ruling denying UT-Austin's jurisdictional plea.

Respectfully submitted,

**THE CARLSON LAW FIRM, P.C.**
11606 N. IH-35
Austin, Texas 78753
Telephone: (512) 346-5688
Fax: (512) 719-4362

By: **/s/ Robert L. Ranco**

Robert L. Ranco
SBN: 24029785
Rranco@carlsonattorneys.com
Counsel for Appellee

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served in accordance with Rule 21 and 21a, Texas Rules of Civil Procedure on this 4th day of March 2015 to all counsel of record.

Attorney:                                 Served by
 Office of the Attorney General        ____    Facsimile:
Joseph D. Hughes                   ____    Email:
Jason Warner                      X___    E-service: via TexFile
PO Box 12548                    ____    CMRRR:
Austin, Texas 78711             ____    Other:
(512) 936-1729
(512)474-2697
Jody.hughes@texasattorneygeneral.gov

**/s/ Robert L. Ranco**
Robert L. Ranco

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), I certify that this brief contains 4,798 words, excluding portions exempted by Rule 9.4(i)(1). In making this certification I rely on the Microsoft Word software word count feature.

**/s/ Robert L. Ranco**
Robert L. Ranco