**AMERICAN AUTOMOBILE INSUR-ANCE COMPANY, Appellant,**

v.

**Jerry BARTLETT, Administrator of the Estate of Mary C. Bartlett, Appellee.**

Supreme Court of Kentucky.

Nov. 18, 1977.

Rehearing Denied Jan. 31, 1978.

Robert C. Hobson, John P. Sandidge, Woodward, Hobson & Fulton, Louisville, for appellant.

Carl J. Bensinger, Louisville, for appellee.

*Reversing*

STEPHENSON, Justice.

American Automobile Insurance Company appeals from a judgment in the sum of

$9,000.29 on the uninsured motorist provision of a policy issued by American to Bartlett. We reverse.

Mary ·C. Bartlett, a passenger in an automobile driven by Mary Thacker, suffered injuries resulting in her death when an unknown vehicle, coming into contact with the Thacker automobile, caused Mary Thacker to lose control of her automobile and strike a utility pole.

The Thacker automobile was covered by a policy of liability insurance issued by Aetna Casualty & Surety Company with a single person liability maximum of $25,000 and in addition uninsured motorist coverage of $10,000 for each person.

Mary Bartlett was covered by an insurance policy issued by American in favor of her and her husband, Jerry Bartlett, which provided for medical payments and uninsured motorist coverage of $10,000 for each person in addition to other coverage not relevant here.

Jerry Bartlett, as administrator of the estate of Mary Bartlett, settled with Aetna for the sum of $25,000. The settlement transaction took a curious turn. Aetna sent Bartlett a "Release in Full," the terms being for the consideration of $25,000.00, released Mary Thacker and Henry Thacker from all claims, damages, etc., "from an accident to the estate of Mary C. Bartlett," together with a check for $25,000. Instead of signing the release as presented, Bartlett inserted into the release, "It is specifically agreed and understood that this does not release any claim of Jerry Bartlett and the estate of Mary C. Bartlett for any uninsured motorist claim nor any subrogation rights that may inure to the insured motorist carrier." This amended release was signed October 25, 1974.

We can imagine the reaction when Aetna received this version of the release. According to the insertion, Aetna did not have a release at all. The settlement figure amounted to policy limits on a single person, but Aetna still remained exposed on the $10,000 uninsured motorist coverage. The situation was further complicated by the fact that Bartlett's lawyer cashed the $25,000 settlement check before returning the release form with the insertion to Aetna. We are advised of this by Bartlett's lawyer.

Aetna demanded that the release be executed as forwarded to Bartlett or return the $25,000. According to the Aetna representative, he and Bartlett's lawyer then agreed upon the following:

## "INDEMNIFICATION AGREEMENT

"Comes Jerry Bartlett, Administrator of the Estate of Mary C. Bartlett, Deceased, and Carl J. Bensinger, his attorney, and hereby agrees to indemnify Aetna Life and Casualty Company for all sums in excess of the $25,000.00 payment made on October 23, 1974, Aetna Life and Casualty Company incurs as a result of defending pending and/or future litigation arising out of the automobile accident of October 29, 1973, wherein, Mary C. Bartlett sustained fatal injuries. We hereby agree to indemnify Aetna Life and Casualty Company for all payments and legal defense costs in excess of the $25,000.00 payment incurred as a result of defending pending and/or future litigation brought by the Estate of Mary C. Bartlett against any alleged uninsured motorist and/or against Aetna Life and Casualty Company as uninsured motorist carrier for Henry Lewis Thacker and Mary Thacker.

"IN WITNESS WHEREOF, we have hereunto set out hands this __15__ day of ___Feb_____, 1975.

IN THE PRESENCE OF
Signed by
Raymond R. Roeland

Signed by
Jerry W. Bartlett
ADMINISTRATOR OF THE
ESTATE OF MARY C. BARTLETT,
DECEASED

Signed by
Carl J. Bensinger
CARL J. BENSINGER."

---

The existence of this document came to light during a deposition for discovery given by Jerry Bartlett on May 29, 1975. The reluctance of Bartlett's lawyer to give a copy of this document to American was overcome when on the day of trial, June 19, 1975, the trial court ordered it done.

After the amended release was executed by Bartlett on October 25, 1974, Bartlett filed suit against American November 30, 1974, on the uninsured motorist provision of American's policy on Mary Bartlett. One month prior to trial, American tendered an amended answer and a third party complaint against Aetna alleging that according to the "Other Insurance" clause of the policy, Aetna's coverage was primary and American's was secondary; that is, American's liability applied only to any amounts recovered in excess of Aetna's coverage.

The clause referred to is as follows: "Other Insurance. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this Coverage exceeds the applicable limit of liability of such other insurance."

The trial court declined to permit the filing of the amended answer and the third party complaint for the reason that it was too late. After the indemnification agreement was produced, American again moved that the pleading be filed, but this motion was overruled by the trial court.

It is apparent that determination of the primary coverage and secondary coverage was considered to be a question of law. We gather this from a conference between the trial court and the lawyers prior to trial:

"Mr. Bensinger: Yes, Sir. Let me explain to you what this is. It really has nothing to do with the case and let me see if I can explain my understanding of the law and I have tried to explain this to Mr. Hobson. Aetna gave me $25,000.00 under their liability policy. Now both Aetna and the American Automobile have this uninsured primary secondary question of $10,000.00. There is a question who comes first and who comes second of the $10,000.00. Now I have discussed that with Mr. Hobson, and that's a legitimate question we may or may not get into depending on the size of the jury verdict. If the jury verdict is $45,000.00 then there is no argument. We're all just wasting our time because there is no doubt about it Mr. Hobson's $10,000.00 policy comes into play and that's it. They pay their $10,000.00 and the case is over. Now if the jury verdict is under $25,000.00 they walk away from the case because I've already got $25,-000.00 I told Mr. Hobson this, from the Aetna. No question about it. I have received twenty-five. Now if it's in the area above $25,000.00 then I would imagine Your Honor would want us to do some law work as to the primary and secondary of that $10,000.00. Now I'm only going to get it, if I get it, from American. I don't have to. I'm not go-

ing to get it from Aetna. And I tried to explain that to Mr. Hobson. Aetna's out of it. I have gotten twenty-five. They're not in this case. I'm not going to get any more and I want to—

"The Court: Do you have the agreement?

"Mr. Bensinger: —and I will gladly . . . I have an indemnification agreement that I gave Aetna just on this basis—

"The Court: Is that what you want to see?

"Mr. Bensinger: —but I don't—it doesn't belong in this case. I don't want to get this case mixed up with Aetna—and they—the Aetna man asked me not to produce this, because Mr. Hobson has asked them for it, and I just want to make sure that—

"The Court: (interrupting) Tell them the Court did.

"Mr. Bensinger: —that the Court is asking.

"Mr. Hobson: Well, I'd like for it to be made a part of the record, please, Miss Mary, the indemnification agreement, and, Mr. Bensinger, what you said I completely concur with with the one reservation that it strikes me clear that our coverage is primary and if you have agreed that, and you have agreed as indicated by that indemnifying agreement, that if a verdict is returned of $35,000.00 or less we owe nothing unless you can show the Court that our coverage is primary, as we understand the concept of primary and secondary coverage. If it's in excess of $35,000.00 we owe up to $45,000.00.

"Mr. Bensinger: Well, that's the real question. I think we're going to see whether we'll get into that or not, whether your $10,000.00 comes in after twenty-five or after thirty-five which may be a moot question after this case.

"Mr. Hobson: It could very easily be. Alright [sic.] Then we understand each other."

The case was submitted to the jury upon an interrogatory that if the jury believed there was contact between the Thacker car and the unidentified motor vehicle, the law was for Bartlett. The jury, in its verdict answered "Yes" and assessed damages in the sum of $34,000.29. The trial court then subtracted $25,000, the amount of the settlement, and entered judgment against American for $9,000.29. *Orr v. Coleman*, Ky., 455 S.W.2d 59 (1970).

American again raised the issue of primary and secondary coverage on a motion for judgment n.o.v., which was overruled by the trial court.

■ We are of the opinion there was an abuse of discretion on the part of the trial court in declining to permit the filing of the amended answer and the third party complaint against Aetna. We regard the issue of primary and secondary coverage as dispositive of this appeal in view of the amount of the jury verdict. The amended answer presented a question of law as to primary coverage and the third party complaint against Aetna asked for a declaration of rights as to primary coverage. Neither would have required a continuance of the case, and it was error not to permit the filing.

■ The "Other Insurance" clause in American's policy, set out above, clearly applies here. Aetna's coverage was not exhausted by the amount of the settlement or exceeded by the jury verdict. We are of the opinion that the Thacker automobile, covered by Aetna's policy, had the primary coverage for this accident and that American's liability on its policy with Bartlett would be effective only to the extent that a jury verdict was in excess of $35,000. Cf. *State Farm Mut. Auto Ins. Co. v. Hall*, 292 Ky. 22, 165 S.W.2d 838 (1942), where, in a similar factual situation, the insurance policy on the automobile was considered to be primary in conformity with the terms of the policy.

Bartlett's argument that no other insurance was available, based on the indemnification agreement and release, attempts to escape the "Other Insurance" clause and is answered by the express terms of the reser-

vation inserted by Bartlett in the release. By the terms of the release, Bartlett could have proceeded against both Aetna and American on the uninsured motorist coverage, exhausting Aetna's policy as the primary coverage, then American's policy as secondary coverage. To the extent the indemnification agreement would operate to prevent Bartlett from retaining any proceeds collected on the uninsured motorist provision, we can only say that Bartlett alone created this situation.

We do not deem it necessary to discuss other issues argued by American.

The judgment is reversed with directions to dismiss the complaint.

All concur.