John L. BROWN, Appellant

v.

MITSUI SUMITOMO INSURANCE COMPANY; State Auto Property and Casualty Company; and Seneca Insurance Company, Appellees

NO. 2013–CA–001191–MR

Court of Appeals of Kentucky.

RENDERED: MAY 6, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Ben T. Haydon, Jr., Bardstown, Kentucky

BRIEF FOR APPELLEE, STATE AUTO: Michael L. Nisbet, Louisville, Kentucky

BRIEF FOR APPELLEE, MITSUI SUMITOMO INS. COMPANY: Brian H. Stephenson, Benjamin A. Bellamy, Louisville, Kentucky

BEFORE: DIXON, KRAMER, AND NICKELL, JUDGES.

*OPINION*

## NICKELL, JUDGE:

In the aftermath of a work-related motor vehicle accident (MVA) for which he sought underinsured motorist (UIM) benefits from his employer's carrier, Mitsui Sumitomo Insurance Company, as well as his own personal carrier, State Auto Property and Casualty Company, John L. Brown appeals from an opinion and order entered by the Jefferson Circuit Court on June 10, 2013, in which it made specific findings of fact and conclusions of law as requested by Brown; denied Brown's motion to set aside a partial summary judgment awarded to State Auto; denied Brown's motion to set aside a judgment on the pleadings entered in favor of Mitsui; and incorporated finality language to enable an appeal to go forward. Having reviewed the briefs, the record and the law, we affirm.

### FACTS

This case arose from a two-car MVA on March 31, 2010. Brown was a passenger in a company-owned vehicle driven by a co-worker when another driver caused a rear-end collision injuring Brown. Brown received workers' compensation [1] benefits in the amount of $6,399.02.

On March 29, 2012, nearly two years later, Brown filed a complaint against the tortfeasor who was insured by Safe Auto Insurance Company, and against State Auto. Believing his employer, Trim Masters, Inc., was "immune from any personal injury liability, or claims for uninsured/underinsured motorist benefits[,]" because he had received workers' compensation benefits, Brown did not name Trim Masters or Mitsui in the complaint.

State Auto answered the complaint, stating its coverage was secondary to Mitsui's policy which covered the vehicle in which Brown was riding at the time of the collision. State Auto then moved for leave to file a third-party complaint to add Mitsui as a defendant. Brown opposed the motion, arguing workers' compensation is an exclusive remedy under KRS [2] 342.690, thereby making Trim Masters and Mitsui immune from suit.

Upon seeing State Auto's memorandum in support of its motion for summary judgment, Brown conceded he should have named Mitsui as a party and moved to amend the complaint. On January 17, 2013, the court granted Brown leave to file an amended complaint naming Mitsui as a defendant.

On February 14, 2013, an order was entered awarding partial summary judgment to State Auto on the original complaint. The order also stated,

> [Brown] is not entitled to Underinsured Motorist (UIM) benefits from Defendant, State Auto, until the UIM benefits available from the policy of insurance issued by Third–Party Defendant, Mitsui Sumitomo Insurance Company of America (Mitsui), are exhausted.

That order was not appealed.

Mitsui answered the amended complaint on March 6, 2013, asserting ten defenses, most notably that the amended complaint did not state a claim on which relief could be granted, and the claim against Mitsui for UIM benefits was untimely filed because the Trim Masters policy contained a contractual requirement that a UIM claim be filed within two years. Mitsui urged dismissal of the amended complaint which was filed nearly three years after the colli-

---

1. Seneca Insurance Company, an appellee, is Brown's employer's workers' compensation carrier.

2. Kentucky Revised Statutes.

sion giving rise to the claim. In a separate pleading, Mitsui urged dismissal of the third-party complaint filed by State Auto for similar reasons.

That same day, Mitsui moved for judgment on the pleadings, supported by a memorandum of law in which it argued: both Brown and State Auto agree Mitsui is the primary UIM carrier and State Auto is the secondary UIM carrier; while the statute of limitations for filing a claim on a written contract is fifteen years, parties to an insurance contract may shorten that period so long as they agree to a "reasonable"[3] timeframe; the Trim Masters insurance policy with Mitsui specifies a two-year window for filing a claim when arbitration does not apply;[4] both the amended complaint and the third-party complaint were filed outside the two-year window; Brown knew the tortfeasor was underinsured during that two-year window because he filed against the tortfeasor and State Auto—his own UIM carrier—within the allotted time; and finally, citing *Elkins v. Kentucky Farm Bureau Mut. Ins. Co.*, 844 S.W.2d 423, 424 (Ky.App.1992), and *Gordon v. Kentucky Farm Bureau Ins. Co.*, 914 S.W.2d 331, 332–33 (Ky.1995), two years is a reasonable contractual window for filing a UIM claim.

In his response, Brown argued a two-year window was unreasonable because it did not allow him:

time to investigate the likelihood that [the tortfeasor] was underinsured. [Brown] was injured in a work-related car accident. He first had to determine whether he would be compensated by his employers' workers (sic) compensation insurance carrier, and to what extent. This process took almost three years. Next, [Brown], through counsel, had to determine the extent and duration of his injuries, before he could begin to comprehend damages. Third, [Brown] had to determine the extent of [the tortfeasor's] insurance coverage, and try to negotiate a settlement with [the tortfeasor's] insurance company. Any settlement could have been for less than [the tortfeasor's] limits, but as no settlement was reached, that is undetermined. Fourth, [Brown] had to file suit against [the tortfeasor]. Only at that time, did [Brown] begin to comprehend the extent of his damages, and the amount of compensation he might receive.

While these details would develop over time, they did not excuse Brown's decision against naming Mitsui in the original complaint to put everyone on notice of his impending claim against another carrier. Brown simply maintained two years—coincidentally, the same window provided by Kentucky's Motor Vehicle Reparations Act (MVRA)[5]—was "insufficient, and therefore unreasonable, for filing a claim for UIM benefits, because it denies the injured party the opportunity to fully investigate his claim." Brown then went on to say,

[t]he fact is, [Brown] filed suit against State Auto, not because of a determination regarding needing underinsured benefits, but rather out of a concern for judicial efficiency and economy. Why have two actions, when one will do? [Brown] did not file suit against Mitsui, because [Brown] believed the exclusive

---

**3.** *Webb v. Kentucky Farm Bureau, Ins. Co.*, 577 S.W.2d 17, 18 (Ky.App.1978) (internal citation omitted).

**4.** According to Mitsui, arbitration was not at issue. While the policy was not attached to the motion, the relevant provision was quoted in full.

**5.** KRS 304.39–230(6).

remedy provision of the Kentucky Workers' Compensation Act barred suit against his employers' insurance carrier. That issue has already been resolved by this Court.

Brown then acknowledged payment of UIM benefits is a contractual obligation and recovery occurs by filing suit against the UIM carrier alone. *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 903 (Ky.1993); *State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554, 557 (Ky.1977).

Mitsui responded that *Brown v. State Auto*, 189 F.Supp.2d 665 (W.D.Ky.2001), the case on which Brown heavily relied, is not binding on Kentucky state courts; Brown failed to suggest an alternative timeframe that would be "reasonable" in his eyes; and, because Brown received no BRB,[6] the timeframe for filing a claim under both the MVRA and the Trim Masters' policy with Mitsui was two years. Mitsui reiterated *Gordon* had deemed a two-year contractual window was reasonable.

On April 12, 2013, the trial court awarded Mitsui judgment on the pleadings and dismissed both claims as to the primary UIM carrier. Entry of that order prompted Brown to move the court to take further steps: issue specific findings of fact explaining the factual basis for the order;

vacate the order because a two-year contractual window is unreasonable; set aside the award of partial summary judgment to State Auto so Brown could disregard the required exhaustion of primary UIM benefits from Mitsui; and, make the opinion and order final so he could appeal.

After hearing argument,[7] the trial court entered an opinion and order making findings of fact and conclusions of law in which it noted: Brown knew—or should have reasonably known—there were two UIM carriers—his personal carrier and his employer's carrier; Brown chose not to file against Mitsui, but timely filed against State Auto and the tortfeasor; Brown did not oppose State Auto's summary judgment motion; when the court awarded partial summary judgment to State Auto, it specifically found State Auto's UIM coverage was secondary to Mitsui's coverage which was primary—a point Brown conceded; because Brown did not exhaust Mitsui's primary UIM coverage, he could not then attempt to recover from State Auto whose coverage was only secondary; and finally, Brown's failure to exhaust UIM benefits from Mitsui did not convert State Auto into the primary UIM carrier. *American Auto Ins. Co. v. Bartlett*, 560 S.W.2d 6 (Ky.1977). As stated by the trial court, "[r]ecovery from Mitsui is the condi-

6. Basic Reparations Benefits. No Personal Injury Protection (PIP) Benefits were paid either.

7. It may have been helpful to hear the argument, but in regard to hearings, the designation of record filed by Brown mentioned only, "Any videotaped and/or digital recordings of any and all hearings on this matter, held on or before June 10, 2013." Under Kentucky Rules of Civil Procedure (CR) 98(3), the "appellant or counsel for appellant, if any, shall provide the clerk with a list setting out the dates on which video recordings were made for all pre-trial and post-trial proceedings

necessary for inclusion in the record on appeal." Designating "any and all hearings," without specifying when those hearings occurred, is inadequate under CR 75.01(1). *Seale v. Riley*, 602 S.W.2d 441, 443 (Ky.App. 1980). It is not the clerk's responsibility to search the record for dates on which hearings may have occurred. We know from review of Brown's own response to Mitsui's motion for judgment on the pleadings, and the final opinion and order entered in this case, hearings occurred on January 14, 2013, and May 28, 2013. These dates were equally available to Brown in preparing his designation of record.

tion precedent to recovery from State Auto."

In its discussion of the law, the trial court stated a claim arising from a written contract must be filed within fifteen years of accrual, KRS 413.090, but acknowledged Kentucky's insurance code allows parties to shorten that window, provided the agreed upon time is reasonable. *Webb*, 577 S.W.2d at 19. The MVRA provides a two-year statute of limitations, *Elkins*, 844 S.W.2d at 424, the same time contractually agreed to by Trim Masters and Mitsui. Furthermore, because Brown filed against State Auto within two years, he should have reasonably known Trim Masters carried UIM insurance on its company vehicles, and should have filed against Mitsui at the same time and within the same two-year window. Thus, the trial court found the two-year contractual window was reasonable and its expiration was fatal to Brown's claims. It is from this opinion and order that Brown now appeals.

## ANALYSIS

Brown raises three issues on appeal. The first is whether the trial court erred in dismissing claims against Mitsui without substantial evidence in the record to support its decision. We discern no error.

■ As a preliminary matter, Brown questions whether Mitsui was properly awarded judgment on the pleadings under CR 12.03 as it requested, or should its motion have been treated as a motion for summary judgment under CR 56. Brown claims absence of a copy of the Trim Masters/Mitsui policy from the record "required the court to look beyond the pleadings to other documents and evidence of record to render a decision[,]" thereby transforming the CR 12.03 motion into a summary judgment motion. Brown does not identify the other documents and evidence on which the trial court supposedly based its decision. We reject Brown's theory.

The purpose of [CR 12.03] is to expedite the termination of a controversy where the ultimate and controlling facts are not in dispute. It is designed to provide a method of disposing of cases where the allegations of the pleadings are admitted and only a question of law is to be decided. The procedure is not intended to delay the trial in any respect, but is to be determined before the trial begins. The basis of the motion is to test the legal sufficiency of a claim or defense in view of all the adverse pleadings. When a party moves for a judgment on the pleadings, he admits for the purposes of his motion not only the truth of all his adversary's well-pleaded allegations of fact and fair inferences therefrom, but also the untruth of all his own allegations which have been denied by his adversary. *Archer v. Citizens Fidelity Bank & Trust Co.*, Ky., 365 S.W.2d 727 (1963). The judgment should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief. *Cf. Spencer v. Woods*, Ky., 282 S.W.2d 851 (1955).

*City of Pioneer Village v. Bullitt County ex rel. Bullitt Fiscal Court*, 104 S.W.3d 757, 759 (Ky.2003). In its motion for judgment on the pleadings, Mitsui quoted language from the Trim Masters policy establishing a two-year window for filing a UIM claim. Mitsui then stated Brown had waited nearly three years to file the amended complaint. Brown has never claimed the contractual window was anything but two years, preferring to argue instead that two years is an unreasonable period of time in which to require a claim to be filed. While Mitsui could have placed the policy in the record by attaching it to its motion as an exhibit, it did not. Alternatively, had

Brown named Mitsui in his original complaint, through discovery[8] he could have developed the record and acquired the Mitsui insurance policy. There is no indication the actual policy was ever presented to the trial court. In our scenario, CR 56 was never triggered because matters outside the record were neither presented to, nor considered by, the trial court. Mitsui's motion contained sufficient facts—which Brown did not refute or even challenge—to justify the award of judgment on the pleadings to Mitsui.

■ To be blunt, it was impossible for the amended complaint Brown filed against Mitsui to go forward because Brown had allowed the two-year contract window to expire without seeking UIM benefits from the primary carrier.[9] It then became impossible to recover from State Auto because Brown had to first exhaust Mitsui's primary UIM coverage—an insurmountable hurdle because Mitsui was beyond his reach. *Metcalf v. State Farm Mut. Auto. Ins. Co.*, 944 S.W.2d 151, 153 (Ky.App.1997).

■ This situation was of Brown's own making. First, he erroneously believed Trim Masters and Mitsui were immune from UIM liability because Trim Masters' workers' compensation carrier had already paid benefits. This was flawed thinking because the exclusive remedy provision of the Workers' Compensation Act, KRS 342.690(1), does "not preclude an employee injured in a work-related automobile accident from recovering against both the workers' compensation insurance and the UIM insurance coverages provided by his employer." *Cincinnati Ins. Co. v. Samples*, 192 S.W.3d 311, 314 (Ky.2006) (citing *Philadelphia Indemnity Insurance Co. v. Morris*, 990 S.W.2d 621, 625 (Ky.1999)).

Second, on March 29, 2012, the day Brown filed the original complaint, he may not have known all the facts necessary to win his case—or even the full amount of damages to demand—but he should have known enough to name his employer's UIM carrier as a defendant along with his own carrier and the tortfeasor. If two years was an adequate period of time in which to file a claim against State Auto, we see no reason one more defendant—Mitsui—could not have been included in the style of the case.

■ As stated previously, a CR 12.03 motion tests "the legal sufficiency of a claim or defense in view of all the adverse pleadings." *City of Pioneer Village*, 104 S.W.3d at 759. In this case, judgment on the pleadings in favor of Mitsui and partial summary judgment in favor of State Auto

8. CR 26.02(2) states in relevant part:
   A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial.

9. Mitsui suggests for the first time in its brief on appeal we "should hold that the UIM/UM policy purchased by [Brown], here State Auto, takes priority such that even though [Brown] failed to bring his action against Mitsui within

the limitations period he would still have a claim against State Auto." We reject this invitation. The argument was not made first in the trial court, and as an appellate court we are not authorized to review issues not raised in the trial court. *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky.App.1990) (internal citations omitted). Furthermore, neither Brown nor State Auto objected when the trial court found Mitsui was the primary UIM carrier and State Auto was the secondary carrier; Brown did not file a reply brief endorsing the argument; and, Mitsui's brief was filed *after* State Auto had filed its brief so it had no opportunity to respond.

was the appropriate resolution. Having failed to timely name Mitsui as a defendant, Brown's claims cannot be saved. Brown cannot deflect responsibility for his own mistake to anyone else—certainly not to the trial court.

■ Brown's second issue is whether a two-year contractual window is a reasonable period of time for filing a UIM claim. On the strength of *Gordon* and *Elkins* we answer this question in the affirmative, as did the trial court.

■ The facts at hand establish an adequate claim for UIM benefits could be filed within two years of a collision because Brown filed such a claim. Before filing a complaint, an attorney must perform due diligence to ensure the potential defendant has some culpability, but "probable cause to initiate a civil action does not require 'the same degree of certainty as to the relevant facts that is required of a private prosecutor of criminal proceedings.'" *Prewitt v. Sexton*, 777 S.W.2d 891, 894 (Ky.1989) (internal citation omitted). While an attorney must have a good faith basis for naming a defendant in a complaint, he need not know all the facts before undertaking discovery.

In reviewing the amended complaint—filed nearly three years after the collision—we discern no facts that would have been unknown to Brown at the time he filed the original complaint. The amended complaint names Mitsui as a defendant and lists its address, but otherwise offers no specifics about injuries or damages sustained, only that they "are in excess of the amount of insurance coverage available to [the tortfeasor] through his liability coverage with Safe Auto Insurance Company." While Brown frames his appellate argument in terms of unreasonableness, he builds his case on shaky ground. The underlying problem with his argument is his initial mistake in assuming Trim Mas-

ters and Mitsui were immune from suit. Under these facts, we simply cannot say two years is an unreasonable contractual window for filing a UIM claim. *State Farm v. Riggs*, 484 S.W.3d 724 (Ky.2016).

■ Brown's third issue is whether the two-year contractual window applies to him—a third-party beneficiary who was not a signatory to the contract between Trim Masters and Mitsui. We answer this question in the affirmative.

■ Usually only parties to a contract may enforce and be bound by its terms. *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 595 (Ky.2012). But some contracts anticipate third-party beneficiaries who are bound by the terms of a contract, *as if* they were a party. That is the situation presented to us—Trim Masters provided UIM coverage for its employees. As an employee of Trim Masters, Brown could attempt to enforce the coverage, but he could not pick and choose the provisions he liked and disregard the others. "[O]ne who sues on a contract made for his benefit must accept the contract as made." *Northern States Contracting Co. v. Swope*, 271 Ky. 140, 111 S.W.2d 610, 614 (1937) (internal citations omitted).

For the foregoing reasons, we affirm the Jefferson Circuit Court's award of judgment on the pleadings to Mitsui and partial summary judgment to State Auto.

ALL CONCUR.